

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Alfred M. Clyde
District Attorney
Fort Worth, Texas

Dear Sir:                    Opinion No. O-7152

Re: Right of foreign corporation,
the majority of the Capital
stock being owned by corpora-
tions incorporated outside of
the United States and controlled
by aliens not residing in the
United States to own real estate
within the corporate limits of a
town in Texas.

We are in receipt of your letter of July 1, 1946,
requesting our opinion on the following matter:

"We are informed that a New York corporation,
the majority of the capital stock being owned
by corporations incorporated outside the United
States and controlled by aliens not residing
in the United States, intends to purchase the
majority of the capital stock of a Texas corpora-
tion which has been in existence for a number of
years and which owns real estate only in the
City of Fort Worth, Texas.

"We request your interpretation of Title 5
of the Revised Civil Statutes of Texas as applied
to the facts herein. As we understand it, Article
174, which is a part of Title 5, states that
no corporation controlled by certain aliens shall
own any lands in Texas, and that land so owned
shall be subject to escheat as though owned by a
non-resident alien. Also, we understand that
Title 5 does not apply to parcels of land owned by
aliens in any incorporated city.

"We will appreciate very much if you will
review the matter in the light of these facts and

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Alfred M. Clyde, Page 2

confirm that if the prospective purchaser
acquires control of the Texas corporation, as
aforesaid, then in your opinion, the real
estate in the incorporated city is not subject
to foreclosure or escheat."

This department in Opinion No. 0-3911, copy of
which is herewith enclosed, has interpreted Article 167,
Vernon's Annotated Civil Statutes that lots or parcels of
land owned by aliens in any incorporated town or city was
an exception to the prohibition contained in Article 166,
V.A.C.S., wherein aliens are prohibited from owning land
in Texas.

The law relative to the matter in question is
contained in Title 5, V.A.C.S. (S.B. No. 142, Ch. 134,
37th Leg. R.S. p. 261). Inasmuch as the courts have not
passed upon the question, it is necessary to arrive at
the legislative intent by construing the language used
in the whole act. For that reason we are quoting same in
full:

"Section 1. That Title 3 of the Revised
Civil Statutes of the State of Texas, 1911, and
all amendments thereto be amended so as to
hereafter read as follows:

"Article 15. No alien or person who is
not a citizen of the United States shall ac-
quire title to or own any lands in the State
of Texas, or acquire any leasehold or other
interest in such lands, except as hereinafter
provided; but he shall have and enjoy in the
State of Texas such rights as to personal
property as are or shall be accorded to citizens
of the United States by the laws of the nation
to which such alien shall belong, or by the
treaties of such nation with the United States,
except as the same may be affected by the pro-
visions of this title and the General Laws of
the State.

"Article 16. This title shall not apply
to any land now owned in this State by aliens,

Honorable Alfred M. Clyde, Page 3

not acquired in violation of any law of
this State, so long as it is held by the
present owners; nor to lots or parcels of land
owned by aliens in any incorporated town or
city of this State, nor to the following
classes of aliens, who are, or who shall be-
come, bona fide inhabitants of this State, so long
as they shall continue to be such bona fide in-
habitants of the State of Texas:

"(1)  Aliens who were bona fide inhabitants
of this State on the date on which this Act
becomes a law.

"(2)  Aliens eligible to citizenship in
the Unites States who shall become bona fide
inhabitants of this State, and who shall, in
conformity with the naturalization laws of
the United States, have declared their inten-
tion to become citizens of the United States.

"(3)  Aliens who are natural born citizens
of nations which have a common land boundary
with the United States.

"(4)  Aliens who are citizens or subjects
of a nation which now permits American citizens
to own land in fee in such country; and any
resident alien who shall acquire land under
the provisions of this article shall have five
years after he shall cease to be a bona fide
inhabitant of this State in which to alienate
said land.

"Article 17.  The provisions of this title
shall not prevent aliens from acquiring lands,
or any interest therein, in the ordinary course
of justice in the collection of debts; nor from
acquiring liens upon real estate, or any interest
therein; nor from lending money and securing the
same upon real estate, or any interest therein;
nor from enforcing any such lien; nor from ac-
quiring and holding title to such real estate,
or any interest therein, upon which a lien may

Honorable Alfred J. Clyde, Page 4

have heretofore or may hereafter be fixed,
or upon which a loan of money may have been
heretofore or hereafter may be made and secured.

"Article 18. All aliens, prohibited
from owning land in this State under the pro-
visions of this title, who shall hereafter
acquire real estate in Texas by devise, descent,
or by purchase as permitted by this title, may
hold same for five years; and if such alien is
a minor, he may hold same for five years after
attaining his majority, or if of unsound mind,
for five years after the appointment of a legal
guardian.

"Article 19. Any alien who shall hereafter
hold lands in Texas, in contravention of the
provisions of this title, may, nevertheless,
convey the fee simple title thereof at any time
before the institution of escheat proceedings
as hereinafter provided; provided, however,
that if any such conveyance shall be made by
such alien either to an alien or to a citizen
of the United States, in trust, and for the
purpose and with the intention of evading the
provisions of this title, such conveyance shall
be null and void; and any such land so conveyed
shall be forfeited and escheated to the State
absolutely.

"Article 20. It shall be the duty of the
Attorney General, or the district or county
attorney, when he shall be informed, or have
reason to believe that lands in the State are being
held contrary to the provisions of this title,
to institute suit in behalf of the State of
Texas in the district court of the county where
such lands are situated, praying for the escheat
of the same on behalf of the State, as in case
of estates of persons dying without devise there-
of and having no heirs.

"Article 21(a). No alien shall ever be
appointed or permitted to qualify as guardian of
the estate of any minor or person of unsound
mind, or as executor or administrator of the

estate of any decedent in this State, unless
he is permitted to own land under the provisions
of this title.

"Article 21(b). No corporation in which the
majority of the capital stock is legally or
equitably owned by aliens prohibited by law
from owning land in the State of Texas shall
acquire title to or own any lands in the State
of Texas, or any leasehold or other interest in
such lands and land so owned shall be subject
to escheat under the provisions of this title
as though owned by a non-resident alien.

"Article 21(c). Land owned in trust, either
by an alien or by a citizen of the United
States, for the beneficial use of any alien or
aliens, or any corporation prohibited from
owning land in this State under the provisions
of this title, shall be subject to forfeiture
as though the legal title thereto was in such
alien or corporation.

"Article 21(d). All aliens now owning
lands in the State of Texas, shall on or be-
fore the 1st day of January 1923 file a written
report under oath, with the Clerk of the County
Court of the County in which such land is
located, giving the name, age, occupation,
personal description, place of birth, last
foreign residence and allegiance, the date and
place of arrival of said alien in the United
States, and his or her present residence and Post
Office address, and the length of time of residence
in the State of Texas, the foreign prince, potentate,
state or sovereignty, of which the alien may be at
the time be a citizen or subject, and the number
of acres of land owned by such alien in such
county, the name and number of the survey, the
abstract and certificate number, the name of
the person or persons, from whom acquired, the
date when acquired, and shall either describe
said land by metes and bounds, or refer to
recorded deed in which same is so described,
which report shall be known as 'REPORT OF ALIEN
OWNERSHIP.' Provided further, that all aliens

hereafter purchasing, or in any manner ac-
quiring lands located in Texas, shall within
six months after such purchase, or acquisition,
file with the County Clerk of the County in
which such land is located, a 'Report of Alien
Ownership,' in terms as above required.

"Any alien who may now own land in Texas,
or who may hereafter acquire any land in Texas,
by purchase or otherwise, who does not,
within the time prescribed in this Article,
file the reports herein provided for, shall be
subject to have such land forfeited and es-
cheated to the State of Texas. The reports
herein acquired shall, when the alien is a minor
or insane person, be filed by the parent or
guardian of such alien. It shall be the duty
of the Clerk of the County Court of each county
to file and record the reports above provided
for in a separate volume, to be entitled, 'RECORD
OF ALIEN OWNED LANDS,' for said county, which
record shall be alphabetically indexed. The
recording fees for recording such reports shall
be paid by the alien owner.

"Sec. 2. All laws and parts of laws in
conflict herewith are hereby expressly repealed.

"Sec. 3. The fact that aliens who do not
propose becoming citizens of the United States
are now attempting to acquire title to large
bodies of fertile land in this State creates
an emergency and an imperative public necessity
that this bill shall and it hereby does take
effect from and after its passage, and it is so
enacted." (Emphasis added)

A careful study of the whole act makes it clear
that the Legislature by incorporating Art. 21(b), which we have
underscored, did so for the sole purpose of preventing an
alien from doing indirectly, (that is by incorporating),
from doing what he is prohibited from doing directly. As
held in our opinion No. C-3911, an alien may acquire and
hold title to real estate located within the corporate

694

limits of towns. (Such exception is contained in Art. 16, supra). Then, later in said act appears Art. 21(b) which we requote:

"Article 21(b). No corporation in which the majority of the capital stock is legally or equitably owned by aliens prohibited by law from owning land in the State of Texas shall acquire title to or own any lands in the State of Texas, or any leasehold or other interest in such lands and land so owned shall be subject to escheat under the provisions of this title as though owned by a non-resident alien." (Emphasis added).

It is clear to us that the phrase "owned by aliens prohibited by law from owning land in the State of Texas", means that if the aliens who own or control the stock of such corporation are prohibited from owning the real estate in question, then the corporation they control is likewise prohibited. The above construction necessarily follows in that aliens are not prohibited from owning real property in incorporated towns. Said Article provides that land owned by a corporation in which the majority of the capital stock is owned by aliens "shall be subject to escheat under the provisions of this title, as though owned by a non-resident alien." If such a corporation owns land in an incorporated town can it be escheated? We think not, for the act says it shall be escheated "as though owned by a non-resident alien." If owned by a non-resident alien it cannot be escheated, as the law expressly gives to a non-resident alien the right to own such lands in incorporated towns.

It is also significant to note that in the codification of our statutes in 1925, the above Article 21(d) was changed so as to require not only aliens, but also alien corporations to make written reports under oath to the County Clerk, and providing that alien corporations as well as aliens who own land in Texas or who may hereafter acquire any land in Texas, who do not file such reports shall be subject to have such land forfeited and escheated to the State of Texas. Such Article 21(d) is now codified as Article 176, V.A.C.S.

It is, therefore, the opinion of this department that a corporation in which the majority of the capital stock is legally or equitably owned by aliens may acquire and own lots or parcels of land in any incorporated city or town in this State. It necessarily follows that such lands cannot be escheated.

Honorable Alfred M. Clyde, Page 8

We do not know for what purpose such corporation was formed. Of course no corporation can own or hold real estate in this State for ultra vires purposes. Our answer, as above given is subject to Chapter IV of Title 32, V.A.C.S., relative to ownership of lands by corporations.

You have not informed us as to the nationalities who own the majority stock in such corporation, and we are unable to take into consideration any treaty or treaties, (if any) that might effect this situation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert
W. V. Geppert
Assistant

APPROVED JUL 20 1946

FIRST ASSISTANT
ATTORNEY GENERAL

WVG:mm

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE